Tennessee Valley Leather Company v. Commissioner.
Tennessee Valley Leather Co. v. Commissioner
Docket No. 16593.
United States Tax Court
1949 Tax Ct. Memo LEXIS 205; 8 T.C.M. (CCH) 396; T.C.M. (RIA) 49100; April 28, 1949
*205 Scott P. Crampton, Esq., for the petitioner. S. Earl Heilman, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $79.03 for the fiscal year ended July 31, 1944 and a deficiency in income tax of $43.88 for the fiscal year ended July 31, 1945. The parties are in agreement, as indicated by stipulations in the record, in regard to certain carry-backs. The issues for decision are whether the respondent erred in disallowing a deduction of $3,000 for 1944 described as "commissions and compromise settlement" and in disallowing a deduction of $520.61 for 1944 described as "legal and professional expenses". Findings of Fact The petitioner was incorporated on August 27, 1943. Its name was changed to Cherokee Leather Goods Company, Incorporated, by an amendment to its certificate of incorporation in 1947. Its income tax returns for the years here involved were filed with the collector of internal revenue for the District of Tennessee. It kept its books and filed its returns upon an accrual basis of accounting, using a fiscal year ending on July 31st. The certificate of incorporation of the *206 petitioner was signed by J. R. Brown, M. M. Yates, and C. L. Teague. The total authorized stock was 100 shares of $100 par value common of which 50 shares was to be issued and paid for "when the Corporation begins business" and the remaining 50 shares were to be sold on order of the Board of Directors. The issuance of preferred stock was also authorized. The certificate provided that the amount of capital with which the corporation shall begin business will be $5,000. The record does not show what, if any, amount was paid in as capital prior to December 3, 1943. No shares of stock of the corporation were issued until February 10, 1944. Teague and Brown discussed the formation of the petitioner prior to its incorporation. Teague understood that he was to have a one-third interest in the corporation, but Brown did not intend that Teague should have a one-third interest if the corporation required more than $5,000 capital. Yates acted as general manager of the petitioner until early in January 1944. Brown also performed executive duties for the petitioner during that period. They devoted only part of their time to the business of the petitioner and were paid at the rate $100of per *207 month for their services. Teague, who came from Texas to Greeneville, Tennessee, to engage in the business of the petitioner, became superintendent of production of the petitioner on a full-time basis. He was paid a salary of $40 per week for his services which were worth more than that amount. He agreed to take the $40 a week because of his expectation that he would share equally with the other two incorporators in the profits of the business. Teague became dissatisfied with the indefinite arrangement which he had and completely severed his connections with the petitioner on December 3, 1943 after negotiations with Brown and Yates. He executed a document on that day which was as follows: "FOR AND IN CONSIDERATION OF THE SUM OF $5,000.00 paid and to be paid as follows: $3,500.00 cash in hand paid, the receipt whereof is hereby acknowledged, and $1,500.00 evidenced by note of even date herewith, payable on or before sixty (60) days from date, to secure which said note the title to the property hereinafter described is retained and shall remain in the Seller until the purchase price is paid in full, I, C. L. Teague, hereby sell, assign, convey and deliver to The American Calendar *208 Company, the following described personal property: [Description of property] "Also, all my right, title and interest in any profits, and commissions which may be due me from the Tennessee Valley Leather Company, Inc., or J. R. Brown and my subscription to capital stock of said Corporation, and to any and all other rights, properties and benefits to which I may be entitled by reason of an agreement entered into with the organizers of the Tennessee Valley Leather Company, Inc. "I covenant that I am the sole owner of the property above described, and that the same is free from all encumbrances. "It is expressly understood and agreed that said property is to remain in Greenville, Tennessee, until the purchase price has been paid in full. "WITNESS my signature, this the 3rd., day of December, 1943. "(Signed) C. L. Teague" It was agreed that $2,000 of the total of $5,000 was for the machinery and equipment described in the document. Brown and Yates were officers of The American Calendar Company which financed all of the transactions of the petitioner in ways not shown by the record. Five thousand dollars was eventually paid to Teague, but the record does not show who paid *209 it or the circumstances under which it was paid or how, if in any way, $3,000 of the total was entered on the books of the petitioner. J. B. James, an attorney, was regularly retained by the petitioner during the fiscal year ended July 31, 1944. He was paid a total of $500 during April, May, June and July of that year, all of which was an ordinary and necessary expense of the petitioner paid and incurred during that year in the conduct of its business. The petitioner paid $86.36 to an accountant during the fiscal year ended July 31, 1944. That amount was an ordinary and necessary expense paid and incurred during the fiscal year in the conduct of the business of the petitioner. The petitioner, on its return for the fiscal year ended July 31, 1944, deducted $3,000 which it described as "commissions and compromise settlement" and $520.61 which it described as "legal and professional" expense. The Commissioner, in determining the deficiency for that year, disallowed both deductions. Opinion MURDOCK, Judge: The petitioner claims the right to deduct $3,000 of the total of $5,000 which Teague received when he severed his connection with the petitioner. That contention must fail *210 because the record does not show what portion, if any, of the $3,000 was paid or incurred by the petitioner. No books or records were offered to show its accrual. Furthermore, it appears that some part or all of the $3,000 was received by Teague for what he regarded as his one-third interest in the corporation. An amount paid by a corporation or an interest in the corporation would not be an ordinary expense of the corporation. The record does not show what part, if any, was additional compensation for services. The record as a whole is too indefinite and vague to justify any change in the Commissioner's determination on this point. The Commissioner disallowed a deduction of $520.61 claimed on the return as legal and professional expense. The record shows that at least that amount was paid to a lawyer and an accountant for services. The respondent attempts to defend his determination upon the ground that the amounts were paid in connection with the compromise agreement and settlement with Teague. The record on this is not too clear, but there is evidence that another attorney handled the Teague settlement and James was employed upon routine matters. He was paid $500 and all of that *211 amount is deductible as an ordinary and necessary expense. The difference of $20.61 was part of a fee paid to a firm of accountants for audits and reports. It has been found that this also was an ordinary and necessary expense although the evidence is meager, to say the least. Decision will be entered under Rule 50.